NO. 07-06-0173-CV


NO. 07-06-0174-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 18, 2006



______________________________




IN RE ANN NELSON PARKER VALLADOLID, RELATOR



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Relator Ann Nelson Parker Valladolid seeks writs of mandamus to compel the
Honorable Ron Enns, Judge of the 69th Judicial District, to either disqualify or recuse
himself from presiding in the two underlying declaratory judgment and will construction
actions commenced by real party in interest Greg Parker, relator's son. Relator also
requests that we grant mandamus relief by vacating two orders signed by the Honorable
Kelly Glen Moore in his capacity as Judge of the Ninth Judicial Administrative Region,
denying her motions for disqualification and, alternatively, recusal of Judge Enns. We
dismiss in part for want of jurisdiction the relief sought against Judge Moore and deny in
all other respects the relief sought against Judge Enns. 

Factual Background


 In 1986, while Judge Enns was in private practice, a member of his firm prepared
mirror-image wills for Claude Nelson and Dorothy Nelson, relator's parents and Greg's
grandparents. Claude predeceased Dorothy in 1993, and according to his will, he devised
his real and personal property to Dorothy and Ann Nelson Parker as Co-Trustees in trust
to be divided into two separate trusts, referred to as the "Marital Trust" and the "Residuary
Trust." The limited mandamus records establish that Judge Enns witnessed the execution
of Claude's will in 1986, but contain only an unsigned copy of Dorothy's 1986 will. There
is no evidence in this record that Dorothy executed the 1986 will. The records do contain
a will executed by Dorothy in 2002, which is similar to the copy of her1986 will, but which
names Greg, an attorney, as trustee of the residuary trust. Judge Enns did not witness and
was not otherwise involved with Dorothy's 2002 will. Dorothy died in 2002. 

 No will contests are at issue, and both wills have been admitted to probate. In 2004,
Greg filed a petition for distribution in his capacity as trustee of Dorothy's residuary trust. 
This sparked a controversy prompting him to file the two underlying proceedings pending
in Judge Enns's court. Relator counterclaimed seeking, among other claims, declaratory
relief regarding the residuary trust.

 At a hearing on September 28, 2005, on a motion to disqualify Greg as opposing
counsel and other matters, Judge Enns advised all counsel of his familiarity with Claude
Nelson from his days in private practice. He also informed counsel he had attended school
with relator and coached Greg in little league. Judge Enns indicated he was "somewhat
familiar with the folks." Following Judge Enns's remarks, relator's local counsel, George
Whittenburg, remarked, "it does not create a problem for us."

 Months later, on February 23, 2006, Whittenburg wrote Judge Enns a detailed letter
notifying him that a recusal issue had come to his attention regarding Judge Enns's
involvement as a witness to Claude's will. Relying on Rule 18b of the Texas Rules of Civil
Procedure, by his letter, Whittenburg urged Judge Enns to recuse himself and to set aside
all previously entered orders. (1)

 After Judge Enns declined to recuse himself per the Whittenburg letter, on March
7, 2006, relator filed a verified Motion for Order of Disqualification and, Alternatively,
Recusal which was forwarded to Judge Moore in his capacity as Presiding Judge of the
Ninth Judicial Administrative Region. Following a telephone hearing, Judge Moore signed
an order in each underling action denying the motion.

 Relator's position in these mandamus proceedings are that Judge Enns's failure to
disclose he was a member of the firm that drafted the Nelsons' wills and that he witnessed
the execution of the wills required him to disqualify himself under article V, section 11 of
the Texas Constitution and Rule 18b(1) of the Texas Rules of Civil Procedure or
alternatively, recuse himself under Rule 18b(2). Presenting five issues alleging abuse of
discretion by both Judge Enns and Judge Moore, relator requests we compel Judge Enns
to remove himself from presiding in the underlying causes and that we vacate Judge
Moore's orders denying her motion to disqualify or alternatively, recuse Judge Enns.

Respondent Judge Moore


 This Court's authority to grant original writs of mandamus is limited. Under the
Texas Government Code, a court of appeals has authority to issue writs of mandamus
when necessary to enforce its jurisdiction or (1) against a judge of a district or county court
in the court of appeals district or (2) a judge of a district court who is acting as a magistrate
at a court of inquiry under Chapter 52 of the Texas Code of Criminal Procedure in the court
of appeals district. See Tex. Gov't Code Ann. § 22.221(a) & (b) (Vernon 2004). Absent
from that list is a judge in his capacity as presiding judge of an administrative judicial
region. We have no authority to issue a writ of mandamus against an official not
prescribed by statute. See generally Casner v. Rosas, 943 S.W.2d 937, 938 (Tex.App.-El
Paso 1997, no writ) (denying leave to file a petition for writ of mandamus against a justice
of the peace). 

 The records before us do not disclose a necessity for issuance of a writ of
mandamus to enforce our jurisdiction. Relator seeks relief against Judge Moore not in his
capacity as a District Judge, but in his capacity as the Presiding Judge of the Ninth Judicial
Administrative Region. This Court has previously held we have no jurisdiction to issue a
writ of mandamus against the Honorable Kelly G. Moore in his capacity as a regional
presiding judge. See In re Hettler, 110 S.W.3d 152, 154-55 (Tex.App.-Amarillo 2003, orig.
proceeding). Thus, relator's request for mandamus relief against Judge Moore is
dismissed for want of jurisdiction.

Respondent Judge Enns


 A writ of mandamus will only issue to correct a clear abuse of discretion or violation
of a duty imposed by law when there is no adequate remedy by appeal, and the relator has
the burden to present the appellate court with a record sufficient to establish the right to
mandamus. Walker v. Packer, 827 S.W.2d 833, 837-39 (Tex. 1992) (orig. proceeding). 
In our analysis, we must "focus on the record that was before the court and whether the
decision was not only arbitrary but also amounted to 'a clear and prejudicial error of law.'"
In re Bristol-Myers Squibb Co., 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding).

 Article V, section 11 of the Texas Constitution provides in part:

 [n]o judge shall sit in any case wherein he may be interested, or where either
of the parties may be connected with him, either by affinity or consanguinity,
within such a degree as may be prescribed by law, or when he shall have
been counsel in the case.

Rule 18b(1) of the Texas Rules of Civil Procedure was intended to expound the
requirements for constitutional disqualifications. See In re O'Connor, 92 S.W.3d 446, 448-49 (Tex. 2002). See also Tesco American, Inc. v. Strong Industries, Inc., __S.W.3d __,
2006 WL 662740, *1-2, 49 Tex. Sup. Ct. J. 448 (Mar. 17, 2006). Subsection (a) of the rule
provides for mandatory disqualification if the judge served as a lawyer in the matter in
controversy, or a lawyer with whom he previously practiced law served during such
association as a lawyer concerning the matter.

 Rule 18b(2) provides the conditions under which recusal is mandatory. The
procedure for pursuing either disqualification or recusal is set forth in Rule 18a. 
Subparagraph (a) requires a verified motion to be filed with the clerk of the court stating the
grounds why the judge before whom the case is pending should not sit. Subparagraph (b)
provides for service of copies of the motion on all other parties or their counsel on the day
the motion is filed.

 The records before us contain a letter dated February 23, 2006, from attorney
George Whittenburg, by which he informally raised a recusal issue with Judge Enns. 
Disqualification, however, was not addressed in the letter. Whittenburg urged Judge Enns
to recuse himself from presiding in the underlying actions due to his partnership while in
private practice in the law firm that prepared the Nelsons' wills in 1986. Following receipt
of the letter, Judge Enns advised all counsel by letter, that he was considering the matters
submitted by the February 23 letter and also directed counsel to advise him on their
positions regarding his former law partner as a material witness in the underlying
proceedings. That same date, relator's Dallas counsel, James Jennings, wrote Judge
Enns expressing, among other concerns, his concurrence with Whittenburg that he should
recuse himself. By footnote, Jennings added:

 We respectfully maintain that the Court should not in any sense "hear" the
recusal issue. If the Court does not voluntarily recuse itself upon its own
consideration of Mr. Whittenburg's letter, then [relator] will file a Motion for
Recusal and, of course, the matter will be assigned to another Court for
consideration . . . . 


According to relator's petitions for writ of mandamus, Judge Enns did not act timely on the
letters to voluntarily step down from the cases without formal motions. 

 The procedural requirements of Rule 18a are mandatory and a party who fails to
comply with the rules waives the right to complain of a trial judge's refusal to recuse. See
Wirtz v. Massachusetts Mut. Life Ins. Co., 898 S.W.2d 414, 422-23 (Tex.App.-Amarillo
1995, no writ). See also McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex.App.-Houston
[1st Dist.] 1995, writ denied). The records before us demonstrate that relator chose to
pursue her request for Judge Enns's recusal by informal means, i.e., letters from counsel,
rather than by verified motions as required by Rule 18a. 

 Moreover, Rule 18a(f) of the Texas Rules of Civil Procedure provides that if a
motion for either disqualification or recusal under Rule 18a is denied, it may be reviewed
for abuse of discretion on appeal from a final judgment. See In re Union Pacific Resources
Co., 969 S.W.2d 427, 428 (Tex. 1998). Mandamus is not an appropriate remedy if an
adequate remedy by appeal exists. Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59
(Tex. 1991). Thus, we have no choice but to deny relator's petitions for writ of mandamus
sought against Judge Enns.

 Accordingly, the petitions for writ of mandamus against the Honorable Kelly Glen
Moore are dismissed for want of jurisdiction; in addition, the petitions for writ of mandamus
against the Honorable Ron Enns are also denied. Further, the emergency stays granted
by this Court in cause numbers 1114P and 4253H by orders of May 1, 2006, are hereby
lifted.

 Don H. Reavis

 Justice

1. According to the documents before us, Judge Enns had heard and ruled on only
a motion to disqualify Greg as opposing counsel. Relator contends Judge Enns sua
sponte ruled on a Motion to Set Aside Mediation Agreement.


ntentionally, knowingly, and
recklessly causing bodily injury to Janet Armstrong, by striking her with a “hard object” and
that appellant did use a “deadly weapon, to-wit: an air pump, that in the manner of its use
and intended use was capable of causing death and serious bodily injury.” Thus, appellant
was charged with aggravated assault.


 At trial, appellant conceded to the jury that an
assault had occurred. The central issue at trial, and before this Court, is whether the
evidence supports the jury’s implied finding of the use of a deadly weapon. A deadly
weapon can be anything that “in the manner of its use or intended use is capable of
causing death or serious bodily injury.” See Tex. Penal Code Ann. § 1.07(a)(17) (Vernon
Supp. 2008). Serious bodily injury is defined as “bodily injury that creates a substantial risk
of death or causes death, serious permanent disfigurement, or protracted loss or
impairment of the function of any bodily member or organ.” See Tex. Penal Code Ann. §
1.07(a)(46) (Vernon Supp. 2008).
          An air pump is not a deadly weapon per se. See Hill v. State, 913 S.W.2d 581, 582-83 (Tex.Crim.App. 1996). However, the fact that the item in question is not a per se deadly
weapon does not mean it could not be found to be a deadly weapon based upon the
manner of its use or intended use. Id. (explaining that the use or intended use must be
capable of causing death or serious bodily injury). It is not, however, required that the
State prove that the item in question did in fact cause serious bodily injury. See Bui v.
State, 964 S.W.2d 335, 342 (Tex.App.–Texarkana 1998, pet. ref’d). In ascertaining
whether the particular item is a deadly weapon, it need only be used in a manner capable
of causing death or serious bodily injury. See Bailey v. State, 38 S.W.3d 157, 158-59
(Tex.Crim.App. 2001). In determining the intent of the appellant to use an item as a deadly
weapon, the jury is entitled to consider appellant’s statements made during and after the
incident. Bui, 964 S.W.2d at 343.
Application 
          The evidence at trial showed that Jessica was the first person assaulted by
appellant. Further, the evidence demonstrated that Jessica was punched in the face by
appellant at least twice. Jessica was unable to testify about how many times she was
struck by the air pump, but knew she was hit at least once on top of the head with the air
pump. However, Janet testified that she was struck at least three times in the head with
the air pump. When the police arrived on the scene there was blood splatter in the
bedroom which Janet identified as coming from the wounds she received to her head. 
When the air pump was taken into custody, there were strands of hair found attached to
the pump. Janet testified that she was in pain after the attack. Pictures, taken on the night
of the assault, clearly show that Janet was more seriously injured than Jessica. Also, it is
significant that appellant told the victims that “ I’m really going to f _ _ _ you up.” Appellant
also made the same type of statement to the police officer when, after being arrested, he
told the officer, “So I beat the f_ _ _ out of them.” 
          By his issue, appellant seems to take the position that, since the jury found
appellant guilty of the lesser included offense of assault on Jessica, any finding of guilty
on the aggravated assault on Janet is automatically irrational and, therefore, factually
insufficient. It is this fact that appellant posits should undermine our confidence in the jury
verdict and, therefore, requires reversal. Sims, 99 S.W.3d at 603. However, this theory
belies the jury’s right to weigh the evidence and to draw appropriate inferences from the
evidence. See Barnum v. State, 7 S.W.3d 782, 789 (Tex.App.–Amarillo 1999, pet. ref’d). 
The record contains the testimony of at least three different police officers each opining
that the air pump was a deadly weapon that, by virtue of the manner of its use and
intended use, was capable of causing death or serious bodily injury. The jury was entitled
to rely upon this expert testimony in its determination of the deadly weapon portion of the
State’s indictment. See Lucero v. State, 915 S.W.2d 612, 615 (Tex.App.–El Paso 1996,
pet. ref’d). A review of the pictures entered into evidence would support a conclusion that
Janet suffered a more severe beating than Jessica. The severity of the injury is also a
factor to be considered when making the deadly weapon determination. See Bethel v.
State, 842 S.W.2d 804, 807 (Tex.App.–Houston [1st Dist.] 1992, no pet.). Finally, we must
remember that, in analyzing the evidence, the jury was required to determine whether or
not the proposed deadly weapon was capable of causing death or serious bodily injury. 
See Bailey, 38 S.W.3d at 158-59 (emphasis added). 
          When all of the evidence is reviewed in a neutral light and we consider the
differences in the testimony of Janet and Jessica regarding the number of times they were
struck with the air pump, the jury could rationally find in the manner of the use and
intended use that the air pump was capable of causing the death or serious bodily injury
to Janet. When the testimony of the police officers is added to this consideration, we
cannot say that the jury acted irrationally in finding appellant guilty of aggravated assault
of Janet. Watson, 204 S.W.3d at 415. Accordingly, appellant’s issue is overruled.
Conclusion
          Having overruled appellant’s issue, the judgment of the trial court is affirmed.


Mackey K. Hancock

Do not publish.                                        Justice